IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

CHRISTINA MARZIALE, Individually and
as mother of Baby Boy Marziale and
DANA McLAIN, Administrator of the
Estate of Elaine Marziale                                       **PLAINTIFFS**

VS.                              CASE NO: 35CV-16-72

CORRECT CARE SOLUTIONS, LLC,
ANDREA OWENS, MAKITA
LAGRANT, KAREN HOLCOMB,
NONA FARMER, LOLA MARIRE CLARY
and JOSHUA TATUM                                                **DEFENDANTS**

### COMPLAINT WITH PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES THE PLAINTIFF, by and through Counsel and for her Complaint she states:

### PARTIES AND JURISDICTION

1.      Plaintiff Christina Marziale (Plaintiff herein) is a resident and citizen of the State of Arkansas, who brings this on behalf of herself and her infant male child.  Dana McLain (McLain herein) is the duly acting and appointed administrator of the Estate of Elaine Marziale, Plaintiff's deceased female child.  Defendants ANDREA OWENS, MAKITA LAGRANT, KAREN HOLCOMB, NONA FARMER, LOLA MARIRE CLARY AND JOSHUA TATUM are each sued in their individual and official capacity as Licensed Practical Nurses employed by Correct Care Solutions, LLC.  This is an action brought for violation of Plaintiff and her children's right to prompt medical care under the ACRA of 1993, for medical negligence, as a victim of a felony under Ark. Code Ann. § 16-118-107 (Supp. 2011), wrongful death, and for the tort of outrage. This Court has personal and subject matter jurisdiction.  Venue is proper, since the injury occurred in this County.  No federal claims are brought.  The doctrine of respondeat superior is invoked.  All actions were taken under color of law.

### GENERAL ALLEGATIONS OF FACT

**EXHIBIT 1**

FILED IN MY OFFICE AND SUMMONS
ISSUED AT 11:05 O'CLOCK A M
_____4/11/16_____ DATE
LAFAYETTE WOODS, SR., CLERK

Page 1 of 7

2.     Plaintiff is currently an inmate at the Department of Community Punishment. She was incarcerated there while approximately seven months pregnant. Plaintiff was not fed appropriately, nor was she given any prenatal care under the supervision of a physician.

3.     So, undersigned counsel sent the letters attached hereto as Exhibit "A" and "B." Despite notice, Defendants did not take timely and appropriate action to make sure Plaintiff's pregnancy was appropriately addressed.

4.     Plaintiff continually complained about pain, but each Defendant did not make sure Plaintiff was evaluated by a physician timely. Plaintiff was likely suffering from a life-threatening obstetric complication similar to pre-eclampsia. In order to treat this condition, the standard of care required Correct Care to obtain a full blood count, a coagulation panel, liver enzymes, electrolytes, and renal function studies, but Correct Care failed to do so timely. The only effective treatment is prompt delivery of the babies. Defendants' failure to recognize this condition and treat it appropriately fell below the standard of care.

5.     Each Defendant's delay was deliberately indifferent to Plaintiff's medical needs, and that of her baby. Indeed, Plaintiff was caused unnecessary pain and unnecessary surgical procedures. Plaintiff has been severely and significantly harmed. Alternatively, Defendant has failed to train its personnel, which caused Plaintiff and her children unnecessary pain and one baby to die.

6.     On incarceration, Plaintiff was having abdominal pain and complaining of chest pain. Plaintiff was told she would see a doctor eventually. But Defendants failed to insure that Plaintiff was seen by an appropriate health care professional timely, thereby breaching the standard of care. Throughout September, Plaintiff's health was continually worsening. Had Defendants' taken timely action, Plaintiff and her babies would not have been injured.

7.     On incarceration, Plaintiff was approximately twenty-nine weeks pregnant with twins, which is a high risk pregnancy.

8.  On 9/8/15, while she was in Medical Office crying in pain, Nurse Grant refused to failed and refused to consult a physician. This was a breach of the standard of care.

9.  On 9/14, with a blood pressure of 152/94, now 32 weeks pregnant and vomiting all day, Plaintiff asked to see doctor, because she had not seen physician since being admitted. Plaintiff reminded Ms. Clary she was High Risk. But Ms. Clary failed to and refused to consult a physician. This was a breach of the standard of care.

10. The standard of care requires a patient like the Plaintiff to be seen by a maternal medicine physician at 30 weeks every two weeks. It falls below the standard of care to allow LPN's to exercise nursing judgment with respect to a patient like the Plaintiff. It falls below the standard of, but this was Correct Care's policy and practice.

11. On 9/18, Plaintiff saw Ms. Grant twice. Plaintiff complained of dizziness to Ms. Grant, who told Plaintiff she was fine each time. Plaintiff requested to see an OB\GYN. This is total disregard for this pregnant woman's symptoms and an exercise of nursing judgment Grant was not qualified to make.

12. On 9/20, Plaintiff again complained to Ms. Farmer, who refused to contact a physician, even though Plaintiff was cramping, in pain, and expelling dark mucous.

13. By 9/23/15, Plaintiff had lost 6 pounds since admission. Defendants failed to provide Plaintiff with proper nutrition and prenatal care.

14. On 10/1, Plaintiff requested "lay down order", but Ms. Owens and Ms. Grant, without consulting a physician, rejected Plaintiff's request. Ms. Grant had previously seen Plaintiff on multiple occasions, yet refused each time to consult a physician. On 10/1/15, Mr. Tatum performed no cervical check, even though Plaintiff complained of cramping. Ms. Owens, Mr. Tate, and Ms. Grant could "feel movement," so the babies were alive. Had Ms. Owens, Mr. Tate, and Ms. Grant taken prompt and appropriate actions, both babies would be alive and unimpaired.

15. On 10/2, Ms. Grant, a Licensed Practical Nurse, again refused to consult an appropriate heath care professional and sealed the fate of Plaintiff and her babies. Ms. Grant's refusal was intentional and reckless, especially since she was acting outside the scope of her practice.

16. On 10/4, Plaintiff complained that she had been vomiting blood all night and had not felt one baby move for some time. She was pale and her heart rate was 138. She was in acute distress, yet Correct Care, acting through its employees, failed to call an ambulance because it wanted to save money, and instead had a facility van take her. This was reckless and a breach of the standard of care. Throughout this process Plaintiff was threatened with discipline if she continued to come to the nurse's office, seeking care.

17. So, Plaintiff was transported to the hospital in a jail van driven by an untrained guard.

18. On the way to the hospital, the guard stopped and purchased a hamburger from Sonic.

## COUNT I

19. Plaintiff and Mclain re-allege the foregoing, as if fully set out herein.

20. Defendants are medical care providers within the meaning of the Arkansas Medical Malpractice Act.

21. In 2015 in Jefferson County Arkansas, the applicable standard of care required Defendants to practice within the scope of their license, to timely and properly evaluate the Plaintiff and her babies, to order and correctly interpret appropriate tests, to provide Plaintiff with proper nutrition and prenatal care, and to timely refer Plaintiff to appropriate health care providers; but each Defendant failed to act in accordance with that standard.

22. Each such failure was a proximate cause of the plaintiff's injuries. Because of Defendants' acts and omissions, Baby Elaine was deceased. Baby Boy Marziale was born

severely depressed with Apgars of 1 and 2. He has deficits, which will only worsen, leading to loss of earnings, need for accommodation, unnecessary medical bills, and future pain and suffering.

23.     Although LPN's have a role in nursing, it is not to take care of High Risk Pregnant Patients. It is beyond the scope of a LPN's practice to exercise nursing judgment in these circumstances, yet each LPN, acting within the scope of Correct Care's express authority and its policy and custom, attempted to exercise nursing judgment, despite also knowing that Plaintiff was a high-risk pregnancy, and despite the fact that similar conduct at this facility had led to the injury, death, or near injury or death of other pregnant women and their babies on previous occasions. Each LPN knew this, but intentionally continued their course of conduct, even though they knew they were in violation of the law.

24.     As a direct and proximate cause of each Defendant's actions and inactions, Plaintiff Marziale and her baby boy each has suffered, and will suffer in the future, unnecessary pain and suffering, depression, loss of work, loss of earning capacity, loss of enjoyment of life, loss of relationship and loss of society with Elaine, and unnecessary medical bills.

25.     Each Defendant's actions have been so egregious so as to warrant punitive damages.

## COUNT II-ACRA

26.     Plaintiff and Mclain re-allege the foregoing, as if fully set out herein.

27.     Plaintiff delivered two (2) children by emergency Ceasarean section. Plaintiff brings this action on behalf of her living child, who has incurred significant medical expense because of Defendant's actions and inactions. The other one, Elaine, is deceased. Had Defendant taken appropriate action, Plaintiff would not have lost Elaine and would not have had to undergo emergency surgery.

28.     Each Defendant, acting under color of law, has denied the Plaintiff her rights under the ACRA of 1993.  Each Defendants was deliberately indifferent to Plaintiff's right to prompt and appropriate medical care for her and her children.

29.     Plaintiff's pregnancy was a serious health condition, and each Defendant knew it.

30.     Each Defendant knew Plaintiff was entitled to prompt and appropriate medical care for her pregnancy.

31.     Each Defendant intentionally failed to provide Plaintiff with prompt and appropriate medical care.

32.     As direct and proximate cause of Defendant's acts and omissions alleged herein, Plaintiff and her children each has suffered severe mental and emotional harm and distress, incurred medical expense, and incurred other damages in an amount to be proven at trial. Indeed, Elaine died because of Defendant's acts and omissions.  So, Plaintiff and Mclain plead for all remedies allowed under Arkansas' wrongful death statute, including loss of enjoyment of life, loss of relationship for all heirs, loss of earnings, and other hedonic damages.

33.     Plaintiff should be awarded punitive damages against the Defendants.

## COUNT III

34.     Plaintiff and Mclain re-allege the foregoing, as if fully set out herein.

35.     Each Defendant knew or should have known that emotional distress was the likely result of their conduct

36.     Each Defendant's conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

37.     The actions of each Defendant were the cause of the plaintiff's distress, and the emotional distress sustained by the Plaintiff, as described above, was so severe that no reasonable person could be expected to endure it, such that they committed the tort of outrage.

38.     Indeed, Defendant's recklessly endangered the life of the Plaintiff and her babies, such that the conduct is, at least, felony manslaughter. Thus, Plaintiff is entitled to relief under Ark. Code Ann. § 16-118-107 (Supp. 2011).

39.     As direct and proximate cause of Defendant's acts and omissions alleged herein, Plaintiff and her children each has suffered severe mental and emotional harm and distress, incurred medical expense, and incurred other damages in an amount to be proven at trial. Indeed, Elaine died because of Defendant's acts and omissions. So, Plaintiff and McClain plead for all remedies allowed under Arkansas' wrongful death statute, including loss of enjoyment of life, loss of relationship for all heirs, loss of earnings, and other hedonic damages.

40.     Plaintiff should be awarded punitive damages against the Defendants.

WHEREFORE Plaintiff and McLain each prays for a declaratory judgment that Defendant's actions have violated Plaintiff's rights granted to her under the Arkansas Constitution, for appropriate compensatory and punitive damages against Defendant exceeding ten million dollars, for reasonable attorney's fees, for a trial by jury, for costs, and for all other proper relief.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501-315-1910 Office
501-315-1916 Facsimile
Attorney for the Plaintiff

By:    /s/ Luther Oneal Sutter
Luther Oneal Sutter, ARBN 95031
luthersutter.law@gmail.com

G:\doc\McNeill Family\PLD\PLD 35CV-16\2016-02-08 COM 35CV - Marziale - McNeill Family.doc

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
5th

| | |
|---|---|
| CHRISTINA MARZIALE, Individually and as mother of Baby Boy Marziale and DANA McLAIN, Administrator of the Estate of Elaine Marziale | PLAINTIFFS |
| VS. CASE NO: 35CV-16-72 | |
| CORRECT CARE SOLUTIONS, LLC, ANDREA OWENS, MAKITA LAGRANT, KAREN HOLCOMB, NONA FARMER, LOLA MARIRE CLARY and JOSHUA TATUM | DEFENDANTS |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW the Plaintiff, by and through counsel, Sutter & Gillham, P.L.L.C., who hereby propounds the following Interrogatories and Requests for Production of Documents upon Defendants, to be answered in the time and manner as prescribed by the Rules of Civil Procedure:

DEFINITIONS:

Except whether otherwise expressly indicated, the following definitions shall apply throughout these Interrogatories:

I. "DOCUMENT" means any material subject to discovery under the Rules of Civil Procedure including, but not limited to, the original and non-identical copies of correspondence, memoranda, agreements, notes, handwritten notes and scratch pads or sheets, accounting entries, purchase orders, invoices, statements of account, records, computer printouts, calculations, tape recordings and all of the writings, recordings of communications, recordings or data compilations in whatever form, including drafts thereof, machine readable information, and any material underlying, supporting or used in the preparation of any document now or formerly within the actual or constructive possession, custody or control of Defendant.

II. "IDENTIFY", when used in reference to a document shall mean to state its: (1) date; (2) author; (3) type of document, (e.g., letter, memorandum, receipt, invoice, schedule, report, telegraph, chart, photograph, sound reproduction, or note); and (4) its present location and the name and address of each present custodian. If any such document was, but is no longer in the possession of Defendant, or subject to its control, or it is no longer in existence, state whether it is: (a) missing or lost; (b) destroyed; (c) transmitted or transferred, voluntarily or involuntarily to other, identifying such others; or (d) otherwise disposed of, and in each instance, explain the circumstances surrounding an authorization for such disposition and state the date or approximate date thereof. To the extent that any of the above information is not available, state any other means of identifying such document.

**EXHIBIT 2**

1

FILED
FEB 11 2016
LAFAYETTE WOODS, SR.
Circuit Clerk
JEFFERSON COUNTY, ARKANSAS

III. "ORAL COMMUNICATION" means all conversations, statements and remarks whether taped, transcribed, recorded or otherwise. When the term "identify" is used herein in conjunction with the term "oral communication," or if the answer to any Interrogatory herein refers to an oral communication, the answer should be fully descriptive of such oral communication typically including: (a) The date of said communication; (b) The place at which it occurred; (c) The person involved, and the last known home address, home telephone number of each person, as well as the present or last known position and business affiliation or employer of each such person; and (d) The substance of the communication.

IV. "PERSON" or "PERSONS", as used herein, shall be deemed to include natural persons, firms, partnerships, associations, joint ventures and corporations.

V. "IDENTIFY", when used in reference to a natural person shall mean to state: (1) his full name, last known address, and telephone number; (2) his present or last known business affiliations and positions in respect thereto during the applicable time as herein defined, and (3) his social security number. To the extent that any of the above information is not available, state all other available means of identifying such natural person.

VI. "YOU" or "YOUR" refers to Defendant, and/or his attorney, agent or others acting on his or their behalf.

VII. "TIME FRAME" where no time frame is specifically indicated or requested herein, Defendant is instructed to specify any relevant time period in his answer.

VIII. The male gender includes the female and the singular includes the plural.

**INTERROGATORIES:**

Please review the Definitions sections above prior to formulating your answers to these Interrogatories.

**INTERROGATORY NO. 1:** Please identify, as described above, each and every person of whom you are aware with knowledge of the facts and circumstances involved in this lawsuit.

**INTERROGATORY NO. 2:** For each person identified in the preceding Interrogatory, please state a brief summary of all facts you believe the person knows and whether you intend to call the person identified to testify at the trial of this cause.

**INTERROGATORY NO. 3:** Do you intend to call any expert witnesses at trial of this cause? If so, please state:

    (a) The field of expertise of the witness;

    (b) The subject matter which is expected to testify, and;

    (c) The substance of the facts and opinions to which the expert is expected to

testify and a summary of the grounds for each such opinion.

**INTERROGATORY NO. 4:** Have you any tangible items of correspondence, memoranda, records, or any other item, which you may offer in evidence at trial of this matter? If so, please enumerate and identify specifically by date and item each such instrument.

**REQUEST FOR PRODUCTION NO. 1:** Please produce and attach copies of any and all documents identified in your answer to Interrogatory No. 4 above.

**INTERROGATORY NO. 5:** Please state specifically all facts that support your denial of any allegations contained in Plaintiff's Complaint.

**INTERROGATORY NO. 6:** Please identify each and every person who has had any oral communication with Plaintiff on behalf of the Defendant since the date of the incidents alleged in Plaintiff's Complaint. Please enumerate and identify such oral communication as detailed in the Definitions above.

**INTERROGATORY NO. 7:** Please enumerate and identify specifically by date and item each and every document produced as a result of any oral or written communication that Defendant, or representative of, had with Plaintiff, or any representative of Plaintiff, since the date of the incidents alleged in Plaintiff's Complaint.

**REQUEST FOR PRODUCTION NO. 2:** Please produce and attach copies of any and all documents identified in your answer to Interrogatory No. 7 above.

**INTERROGATORY NO. 8:** With respect to any and all policies of insurance, including primary and excess insurance policies, which may provide coverage for the damages sought by the Plaintiff(including bodily injury, uninsured motorist, underinsured motorist, excess coverage, umbrella coverage, and any other potential insurance coverage of any kind), please state:

(a) The name of each insurance company providing coverage;

(b) The extent of coverage provided by each policy of insurance, including coverage for both personal injury and property damage;

(c) The policy number of each policy of insurance; and

3

(d) The effective date of each policy of insurance.

**REQUEST FOR PRODUCTION NO. 3:** Please produce and attach copies of the insurance policies and declarations page for each of those policies identified in your answer to Interrogatory No. 8 above.

**INTERROGATORY NO. 9:** For each affirmative defense you have asserted, please state all facts that support such assertion.

**INTERROGATORY NO. 10:** If you have pled insufficiency of process or insufficiency of service of process, please state all facts that support this assertion.

**INTERROGATORY NO. 11:** Identify all persons who have been consulted or who have contributed in any way to the collection of information and/or the formulation of the answers contained herein.

**INTERROGATORY NO. 12:** Please state if you will treat these Interrogatories and Requests for Production of Documents as continuing in nature and supplement your answers or responses hereto within 10 days of obtaining information that modifies the responses made.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501-315-1910 Office
501-315-1916 Facsimile
Attorney for the Plaintiff

By: /s/ Luther Oneal Sutter
Luther Oneal Sutter, ARBN 95031
luthersutter.law@gmail.com

G:\doc\McNeill Family\DISC\DISC 35CV-16 Marzialle - McNeill Family\PLT DISC1 - Marziale - McNeill Family\2016-02-08 PLT DISC1 - 35CV - Marziale - McNeill Family.doc